**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

KATHRYN M. STOVALL,                    :
                                                          :
                    Plaintiff,                          :
                                                          :
          VS.                                             :
                                                          :          3 :11-CV-10 (CDL)
MICHAEL J. ASTRUE,                      :
Commissioner of Social Security,        :
                                                          :
                    Defendant.                        :
_____

**RECOMMENDATION**

Plaintiff herein filed this Social Security appeal on January 27, 2011, challenging the

Commissioner's final decision denying her application for disability benefits, finding her not disabled

within the meaning of the Social Security Act and Regulations.  (Doc. 1).  All administrative remedies

have been exhausted.

**LEGAL STANDARDS**

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the

Commissioner's decision is supported by substantial evidence and whether the Commissioner applied

the correct legal standards to the evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007).  The Commissioner's factual

findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla,

such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th

Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

***Administrative Proceedings***

Plaintiff filed an application for Supplemental Security Income benefits on November 29, 2004.  (Tr. 26, 103).  Her claims were denied initially and upon reconsideration.  (Tr. 46-48; 39-42).  A hearing was held before an Administrative Law Judge ("ALJ") in Athens, Georgia on July 30, 2008.  (Tr. 26; 63).  Thereafter, in a hearing decision dated August 21, 2008, the ALJ determined that Plaintiff was not disabled.  (Tr. 26-33).   The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.  (Tr. 4-7).

***Statement of Facts and Evidence***

The Plaintiff was twenty-five (25) years of age at the time of the hearing before the ALJ, and alleged disability since November 10, 1998, due to "depression, anxiety, social phobia, [an] eating disorder, OCD, ADD, PTSD, becoming manic depressive, reactive respiratory syndrome, suicidal thoughts, [and] short term memory loss." (Tr. 258, 103, 107-108).  Plaintiff completed high school, and has no past relevant work experience. (Tr. 259, 32).

As determined by the ALJ, Plaintiff suffers from the following impairments: bipolar disorder and personality disorder.  (Tr. 28).  The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and she remained capable of performing work as follows:

> [T]he claimant has the residual functional capacity to perform a full range
> of work at all exertional levels, but she has non-exertional limitations that
> restrict the claimant to unskilled work that involves simple, routine
> instructions.  She can complete an ordinary routine task without
> supervision and maintain socially acceptable behavior and can generally
> interact in a satisfactory manner with co-workers, the public, and
> supervisors.  She would not have more than an occasional problem
> meeting production and maintaining a satisfactory pace and no problem
> meeting (sic) adapting to work changes.

(Tr. 30).  As Plaintiff had no past relevant work experience, the ALJ considered Plaintiff's age,

education, work experience, and residual functional capacity, and applied the Medical-Vocational

Guidelines to determine that Plaintiff remained capable of performing jobs that existed in significant

numbers in the national economy, and thus, was not disabled. (Tr. 32-33).

## DISCUSSION

Plaintiff alleges that the ALJ erred in determining Plaintiff's Residual Functional Capacity

("RFC"), and erred by failing to present the Vocational Expert with a complete hypothetical question.

(Doc. 10).

### *Residual Functional Capacity*

The ALJ determined that, based on the record, Plaintiff is capable of performing unskilled work

that involves simple, routine instructions. (Tr. 30).  Plaintiff states that the ALJ's determination of her

RFC was in error because the ALJ incorrectly discredited Plaintiff's examining psychologist, Dr.

Butryn. (Doc. 10).

A claimant's RFC is "the most [she] can still do despite [her] limitations."  20 C.F.R. §

404.1545(a)(1).  The determination of the RFC is an administrative assessment based on all the

evidence of how Plaintiff's impairments and related symptoms affect her ability to perform work-

related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ,

based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).  Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

In determining the severity of Plaintiff's mental impairments, the ALJ should rely on medical evidence that indicates what the Plaintiff is capable of doing in the work place despite the impairments.  The medical evidence should show Plaintiff's ability to "understand, to carry out, and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures" despite the impairments.  20 C.F.R. § 404.1513(c).

When deciding the evidence, an examining physician is generally entitled to more weight than a non-examining physician, unless good cause is shown.  *Davison v. Astrue*, 370 Fed. Appx. 995, 996-97 (11th Cir. 2010); *Shaw v. Astrue*, 392 Fed. Appx. 684, 687 (11th Cir. 2010).   "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Lewis*, 125 F.3d at 1440.  Also, the ALJ does not need to give a physician's opinion considerable weight if the evidence of Plaintiff's daily activities contradicts the opinion.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

"In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p.  The weight given to a non-examining consultant's opinion depends on "the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of*

4

*Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

Herein, when determining the RFC, the ALJ analyzed the record as a whole, including Plaintiff's treating source, examining physician, the State Agency physician and psychologist, and the testimony of Plaintiff and her mother.  (Tr. 28-32).

The ALJ afforded less weight to Dr. Butryn, an examining physician, because his opinion of Plaintiff's ability to work was not supported by his evaluation notes, and because Plaintiff was able to seek and obtain employment after her onset date.  (Tr. 31).  Dr. Butryn submitted a psychological evaluation regarding Plaintiff's mental abilities.  (Tr. 205-07).  In the evaluation, Dr. Butryn opined that "the prognosis for [Plaintiff's] recovery and return to full time work is poor."  (Tr. 206).  Dr. Butryn also stated that Plaintiff's "ability to interact appropriately with the public, supervisors, and co-workers is not intact."  (Tr. 206).  Further, Dr. Butryn determined that Plaintiff's "ability to follow work routines and complete production expectations is minimally intact due to mental confusion." (Tr. 206).

However, Dr. Butryn's evaluation notes stated that Plaintiff was "emotionally stable throughout the evaluation."  (Tr. 206).  More importantly, at the time of the evaluation, Plaintiff's daily activities including working for Rich's/Macy's.  (Tr. 205).  Plaintiff scored a 29/30 on the mental status examination, with a deficit in delayed memory recall.  (Tr. 206).  At the time of the evaluation, Plaintiff's thought content was intact, she displayed a relatively intact level of cognitive functioning, her mood and affect were appropriate as to thought and content, and her communication patterns were appropriate.  (Tr. 206).  Plaintiff was also able to understand and carry out simple instructions, and Plaintiff's "concentration and attentional capacity [was] minimally satisfactory."  (Tr. 206). Additionally, Plaintiff was reportedly "independent for many activities of daily living", and if awarded

benefits, Dr. Butryn stated that Plaintiff could manage her funds.  (Tr. 206-07).

After assigning less weight to Dr. Butryn, the ALJ accorded more weight to the opinion of Dr. Cole, a State Agency psychologist, because his opinion was supported by the record and included careful consideration of Plaintiff's allegations about her symptoms and limitations.  (Tr. 31). Dr. Cole determined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain concentration for extended periods of time, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting[1]. (Tr. 216-17). Dr. Cole also found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  (Tr. 217).   Plaintiff was not significantly limited in any other area of understanding and memory, sustained concentration and persistence, social interaction, or adaptation.  (Tr. 216-17).

The medical evidence shows that Plaintiff was hospitalized in February of 2001 because she said she felt suicidal.  (Tr. 185).  After spending a day in the hospital crying, Plaintiff stated that she was only crying because she was in the hospital.  (Tr. 185).  During the attending physician, Dr. Thomas Jordan's, examination of Plaintiff, Plaintiff was "calm, appropriate, not crying, [and] oriented to time, place, person, and situation."  (Tr. 185).  Dr. Jordan noted that Plaintiff had a normal mental

---

[1]The ALJ determined that Plaintiff would have no problems adapting to work place changes. Plaintiff also asserts that this is an error because Dr. Cole's assessment stated that Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting. However, in the hypothetical question, the ALJ asked the VE to identify jobs that would include the limitation of having "problems adapting to work place changes."  The VE identified jobs in the region that would allow for problems adapting to work place changes.  Thus, if the ALJ incorrectly transcribed the RFC, it is harmless error as the record contained sufficient evidence to support a moderate limitation in adapting to work place changes. *See Kersey v. Astrue*, 2010 WL 1416477, *4 (M.D. Ga March 30, 2010) (finding an ALJ's RFC which did not specifically identify a limitation was harmless error when the hypothetical question posed to the VE included the limitation).

status examination, which was contrary to the facts in the medical chart.  (Tr. 186).  He further stated that Plaintiff "has been able to pull it together when she needed to." (Tr. 186).

Further, Plaintiff's treatment records from Advantage Behavioral Health Systems state that, on June 29, 2004, Plaintiff was depressed, irritable, and anxious; however, her affect, thought process, orientation, and behavior were all unremarkable. (Tr. 204).  The treatment records also show that, on July 12, 2004, Plaintiff's mood was depressed and irritable, and her affect was somewhat flat.  (Tr. 203).  Yet, Plaintiff's thought process, orientation, and behavior were all unremarkable.  (Tr. 203).

The ALJ's assessment of Plaintiff's RFC must be based on all relevant evidence, and the opinion of a medical source is one consideration factored together with the rest of the relevant evidence.  20 C.F.R. § 404.1545; 20 C.F.R. § 404.1527; *see also* SSR 96-5p ("A medical source statement is evidence that is submitted to the SSA by an individual's medical source reflecting the source's opinion based on his or her knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).").  The ALJ determined that the opinion of Dr. Butryn was not supported by his own evaluation notes or Plaintiff's daily activities, and thus his opinion was not included in Plaintiff's RFC.  (Tr. 31).

When determining Plaintiff's RFC, the ALJ analyzed the objective medical evidence, the opinions of medical sources, and the State Agency physician and psychologist, and included limitations that he found to be consistent with the record as a whole.  The ALJ's RFC assessment was based on substantial evidence; thus, the ALJ did not err in his determination of Plaintiff's limitations.

***Vocational Expert's Testimony***

Plaintiff also asserts that the ALJ committed error by failing to present a complete hypothetical question to the Vocational Expert ("VE"), in that he failed to quantify the degree of "problems"

Plaintiff would have interacting with people and adapting to work place changes. (Doc. 10).

Once a claimant proves at Step Four that she can no longer perform her past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in the national economy that the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The testimony of a VE may provide the basis for a finding by the ALJ that the Plaintiff can still perform other jobs at Step Five. *Id.* "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

The ALJ posed a hypothetical question to the VE regarding work performance which included problems interacting with people and adapting to work place changes. (Tr. 275). (The question posed to the VE was actually broader, insofar as Plaintiff's limitations were concerned, than the ALJ's ultimate RFC determination.) The VE testified that there were jobs available in the region and the national economy that would meet the posed hypothetical. (Tr. 276). After determining Plaintiff's RFC, the ALJ found that Plaintiff can interact in a satisfactory manner with co-workers, the public, and supervisors, and "would have the ability to adapt to work changes". (Tr. 30-31). Thus, the ALJ's hypothetical question to the VE provided sufficient information to determine if there was a significant number of jobs available that Plaintiff could perform despite any potential "problems" Plaintiff may have had interacting with people and adapting to work place changes. *See Jarrett*, 422 Fed. Appx. at 871 (finding an ALJ's hypothetical sufficiently accounted for moderate difficulties in concentration, persistence, and pace when the question stated that the plaintiff had limitations in her ability to concentrate); *Griffis v. Commissioner of Social Security*, 2010 WL 963466, *5 (M.D. Fla. March 12, 2010) (finding a hypothetical posed to a VE which included more severe limitations than contained in Plaintiff's RFC properly included all relevant functional limitations); *Connors v. Astrue*, 2009 WL

742682, *6 (D. Or. March 19, 2009) (determining that the ALJ did not err when his question to the VE included the medical opinion limitations which were more severe than the limitations included in the ALJ's decision).

The ALJ's RFC assessment of Plaintiff was based on substantial evidence, and the hypothetical question posed by the ALJ sufficiently encompassed Plaintiff's RFC.  Therefore, the ALJ's findings regarding the VE's testimony is supported by substantial evidence, and the ALJ did not err when he relied on the VE's testimony.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**  this 9th day of December, 2011.

s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

llf